# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SIDDEEQ HENRY, | ) | |
| Plaintiff, | ) | C.A. No. 16-250 Erie |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Baxter |
| CO W. LAMOREAUX, et al., | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION[1]

United States Magistrate Judge Susan Paradise Baxter

## I.  INTRODUCTION

### A.  Relevant Procedural History

Plaintiff Siddeeq Henry, an inmate incarcerated at the State Correctional Institution at Forest in Marienville, Pennsylvania, filed this *pro se* civil rights action on June 11, 2015, against three corrections officers at SCI-Forest: CO W. Lamoreaux ("Lamoreaux"); CO Wells ("Wells"), and CO Ellenberger ("Ellenberger"). In his *pro se* complaint, Plaintiff alleges three counts: (1) an Eighth Amendment excessive use of force claim against all Defendants; (2) a claim of retaliation against Defendant Wells; and (3) a civil conspiracy claim against all Defendants. Defendants filed an answer to Plaintiff's complaint on March 20, 2017, and the parties have since completed discovery.

On September 15, 2017, Defendants filed a motion for summary judgment [ECF No. 30], arguing that Plaintiff procedurally defaulted his claims against Defendants Lamoreaux and

---

[1] The parties have consented to having a United States Magistrate Judge exercise jurisdiction over this matter. [ECF Nos. 4, 13].

1

Ellenberger, and has otherwise failed to state a claim upon which relief may be granted. Plaintiff has since filed a memorandum of law in opposition to Defendants' motion, supported by his own sworn declaration.[2] [ECF No. 51, 52]. This matter is now ripe for consideration.

### B. Standards of Review

#### 1. Summary Judgment

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Under Rule 56, the district court must enter summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (19896). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323 quoting Fed.R.Civ.P. 56.

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex, 477 U.S. at 330. See also Andreoli

---

[2] The facts asserted in Plaintiff's declaration are in stark contrast to those detailed in Defendants' Concise Statement of Undisputed Material Facts [ECF No. 32], which Defendants have filed in support of their motion. Thus, it is

v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004). When a non-moving party would have the burden of proof at trial, the moving party has no burden to negate the opponent's claim. Celotex, 477 U.S. at 323. The moving party need not produce any evidence showing the absence of a genuine issue of material fact. Id. at 325. "Instead, … the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Id. After the moving party has satisfied this low burden, the nonmoving party must provide facts showing that there is a genuine issue for trial to avoid summary judgment. Id. at 324. "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." Id. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001); Garcia v. Kimmell, 2010 WL 2089639, at * 1 (3d Cir. 2010) quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005) (the non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue.").

In considering these evidentiary materials, "courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." Scott v. Harris, 550 U.S. 372, 378 (2007) (internal quotation marks and alterations omitted). See also Doe v. Cnty. of Centre, Pa., 242 F.3d 437, 446 (3d Cir. 2001) (when applying this standard, the court must examine the factual record and make reasonable inferences therefrom in the light most favorable to the party opposing summary judgment).

---

apparent there are few material facts regarding the incidents at issue that are indeed undisputed.

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson., 477 U.S. at 248, 255 ("only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."). In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 249. The court may consider any evidence that would be admissible at trial in deciding the merits of a motion for summary judgment. Horta v. Sullivan, 4 F.3d 2, 8 (1st Cir. 1993).

### 2. *Pro Se* **Pleadings**

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969) ("petition prepared by a prisoner... may be inartfully drawn and should be read 'with a measure of tolerance'"); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a

complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997) (overruled on other grounds). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) (discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990) (same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

## II.    DISCUSSION

### A.    Procedural Default - Defendants Lamoreaux and Ellenberger

Defendants argue that Plaintiff procedurally defaulted his claims against Defendants Lamoreaux and Ellenberger because neither Defendant was identified, "either expressly or implicitly, in all of [Plaintiff's] grievance filings" regarding the incidents at issue in this case.

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This language is mandatory. Ross v. Blake, 136 S. Ct. 1850, 1856 (2016). Moreover, the "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

The PLRA also mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court. Woodford v. Ngo, 548 U.S. 81, 93 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no

adjunctive system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90–91. Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seek[] to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" Id. at 93 (quoting Porter, 534 U.S. at 525). Courts have concluded that inmates who fail to fully or timely complete the prison grievance process are barred from subsequently litigating claims in federal courts. See, e.g., Booth v. Churner, 206 F.3d 289 (3d Cir. 2000); Bolla v. Strickland, 304 F. App'x 22 (3d Cir. 2008); Jetter v. Beard, 183 F. App'x 178 (3d Cir. 2006).

The PLRA, itself, does not require a prisoner to have named each individual whom he sues in a prior grievance. Jones v. Bock, 549 U.S. 199, 218 (2007) (concluding that "exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances"). "However, prisoners are required to complete the administrative review process in accordance with rules that are defined by the prison grievance process" – including the rules relating to whom must be identified in the grievance. Byrd v. Shannon, 715 F.3d 117, 127 (3d Cir. 2013) (citing Jones, 549 U.S. at 218). If a prisoner fails to properly exhaust the available administrative remedies, he cannot bring suit on such claim(s) in federal court. Goins v. Longstreet, 2013 WL 869644, at *5 (W.D. Pa. Feb. 13, 2013) (citing Oliver v. Beard, 2011 WL 4565787, at *7 (M.D. Pa. Sept. 29, 2011); Spruill v. Gillis, 372 F.3d 218, 227–32 (3d Cir. 2004).

The Pennsylvania Department of Corrections ("DOC") has implemented an official Inmate Grievance System, which is governed by Administrative Directive 804 ("DC–ADM

804").[3] The relevant provision of the prison grievance process is DC-ADM 804 § 1.A.11, which, at the time Plaintiff filed his grievances, stated, in pertinent part, "The inmate shall identify individuals directly involved in the event(s)." Thus, the Court in Spruill held that Pennsylvania DOC's grievance policy contains a requirement to name responsible individuals. Spruill, 372 F.3d at 234. See also Williams v. Pennsylvania, Dep't of Corrections, 146 Fed. Appx. 554, 557 (3d Cir. 2005) (failure to identify defendants by name in grievances "means that [plaintiff] failed to exhaust his administrative remedies in accordance with Pennsylvania's grievance process and the PLRA"); Brown v. Maxa, 2013 WL 1150728, at *7 (W.D.Pa. Mar. 19, 2013) ("Failure to name a Defendant at any time in the grievance procedure constitutes a procedural default").

Here, the only grievance Plaintiff filed with regard to his claim of excessive use of force is Grievance #615863 [ECF No. 33-15]. This grievance complains, *inter alia*, that Plaintiff was "involved in a physical altercation with 6-10 C/O's" and, after being handcuffed, was "punched and elbowed" in his right rib cage by a corrections officer identified as "Friedline," "while C/O (Ellenberger) punched [him] in the left side of [his] face...." (ECF No. 33-15, Grievance Exhibits, at p. 7). The grievance does not mention Defendant Lamoreaux anywhere by name. However, on appeal to the Superintendent from the initial review response denying his grievance, Plaintiff indicates, "please note in my initial grievance I stated Officer Friedline as the aggressor striking me in my right rib cage but, in fact, it was Officer Lamoreaux…" (Id. at p. 3). Although

---

[3] Although neither Plaintiff nor Defendants have provided the Court with a copy of the DC-ADM 804, "the Court may take judicial notice that the applicable grievance procedure was the DC-ADM 804 and judicial notice that generally inmates who are in custody of the DOC receive a copy of the Inmate Handbook which contains portions of the DOC's grievance policy, DC-ADM-804." Mayon v. Capozza, 2017 WL 476790, at *7 (W.D. Pa. Feb. 6, 2017) (citations omitted).

Defendants are correct that neither Defendant Ellenberger nor Defendant Lamoreaux was named in **all** of Plaintiff's grievance filings, each was identified by name at least once during the grievance process. This was sufficient to put prison officials on notice that each of the Defendants was claimed to be guilty of wrongdoing, thus satisfying the aim of DC–ADM 804. See Spruill, 372 F.3d at 234 ("The purpose of the regulation here is to put the prison officials on notice of the persons claimed to be guilty of wrongdoing"); Brown, 2013 WL 1150728, at *7 (same). For this reason, Defendants' motion for summary judgment based on Plaintiff's procedural default of his claims against Defendants Ellenberger and Lamoreaux will be denied.

### B. Excessive Use of Force

"In determining whether a correctional officer has used excessive force in violation of the Eighth Amendment, courts look to several factors including: (1) 'the need for the application of force;' (2) 'the relationship between the need and the amount of force that was used;' (3) 'the extent of injury inflicted;' (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them;' and (5) 'any efforts made to temper the severity of a forceful response.'" Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000), quoting Whitley v. Albers, 475 U.S. 312, 321 (1986). The central question is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992). Moreover, "a showing of 'significant' or 'serious' injury is not necessary to make an Eighth Amendment claim." Brooks, 204 F.3d at 107, quoting Hudson, 503 U.S. at 8.

The difficulty here is that the record contains two widely disparate accounts of the

physical altercation that took place on February 26, 2016. While Defendants contend that Plaintiff initiated the aggression that necessitated the use of force at issue, Plaintiff claims that he was assaulted unnecessarily after he was already placed in handcuffs. Although video evidence of the incident has been submitted, the view offered by the footage is too distant at first and is then largely obscured by the number of bodies involved in the altercation. Thus, the video fails to provide any clarity beyond establishing that a physical altercation did, indeed, occur at the time and place alleged in the complaint.[4] As a result, Plaintiff's excessive use of force claim necessarily involves a credibility dispute that may not be resolved as a matter of law at the summary judgment stage.

### C. Retaliation Claim

Plaintiff alleges that Defendants Wells retaliated against him for filing a grievance against Defendant Wells and other officers for using excessive use of force against him on February 26, 2016. In particular, Plaintiff alleges that Defendant Wells called him a "snitch" in front of other inmates on at least two occasions on April 7, 2016, and encouraged another inmate not to talk to Plaintiff because he was a "snitch."

Prisoners alleging retaliation for exercising their First Amendment rights must show three elements: (1) the conduct leading to the retaliation was constitutionally protected; (2) the prisoner endured an adverse action by prison officials; and (3) the exercise of a constitutional right was a substantial or motivating factor in the alleged retaliatory action. Rauser v. Horn, 241 F.3d 330,

---

[4] This lack of clarity is evident from the fact that neither party cites the video footage as conclusive evidence of one position over the other.

9

333–34 (3d Cir. 2001). If a prisoner shows the three retaliation elements, prison officials "may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Id. at 334.

Here, Defendants argue that that Plaintiff has failed to establish either that he suffered an adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights," Rauser, 241 F.3d at 333, or that there was a causal connection between the exercise of Plaintiff's constitutional right to file a grievance and the allegedly adverse action. The Court disagrees on both counts.

### 1. Adverse Action

An adverse action is sufficient "'to deter a person of ordinary firmness from exercising his First Amendment rights.'" Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000), quoting Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000). "'Government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right.'" Allah, 229 F.3d at 224 quoting Thaddeus-X v. Blatter, 175 F.3d 378, 386 (6th Cir. 1999) (en banc). It "need not be great in order to be actionable" but must be "more than de minimis." McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006) (internal quotations and emphasis omitted).

With regard to the specific context of Plaintiff's allegations, courts in the Third Circuit have found that "a corrections officer's verbal abuse of an inmate and his encouragement of other residents to take action against the 'snitch' may establish adverse action." Miller v Trometter, 2012 WL 5933015, at *7 (M.D.Pa. Nov. 27, 2012), citing Rivera v. Marcoantonio, 153 Fed.

10

Appx. 857, 859 (3d Cir. 2005); Bracey v. Pa. Dep't of Corrections, 2012 WL 750911, at *9 (W.D.Pa. Feb. 17, 2012) (finding "adverse action" by a prison official in denying the inmate food and spreading rumors that the inmate was a snitch and a rat). Based on this precedent, the Court finds that Plaintiff has sufficiently alleged an adverse action to satisfy the second prong of his retaliation claim.

### 2. Causal Connection

To prove that a protected activity was a substantial or motivating factor in an alleged retaliatory action, a plaintiff must show "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." Watson v. Rozum, 834 F.3d 417, 424 (3d Cir. 2016). "[T]he timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred." Estate of Smith v. Marasco, 318 F.3d 497, 512 (3d Cir. 2003) (internal quotation marks omitted) quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997). When temporal proximity is not close enough to unduly suggest a retaliatory motive, the test is "timing plus other evidence." Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280 (3d Cir. 2000).

Here, the record shows that Plaintiff filed the subject grievance against Defendant Wells, among others, on March 5, 2016. (ECF No. 33-15, at p. 7). On March 16, 2016, Plaintiff received an extension notice indicating that Plaintiff's allegations of excessive force were being investigated. (Id. at p. 6). Defendant Wells' alleged retaliatory conduct occurred on April 7, 2016, while the investigation was still ongoing and only one month after the filing of the

11

grievance at issue. Thus, the temporal proximity of Plaintiff's protected activity of filing a grievance and the alleged retaliatory conduct of Defendant Wells is close enough to be considered "unusually suggestive" of retaliatory motive, so as to satisfy the third element of Plaintiff's retaliation claim.

Accordingly, Defendants' motion for summary judgment as to Plaintiff's retaliation claim against Defendant Wells will be denied.

### D. Civil Conspiracy

Plaintiff has alleged, *inter alia,* that Defendants "conspired with one another to use unnecessary excessive force while the Plaintiff posed as no threat in handcuffs or shackles," in violation of 42 U.S.C. §§ 1985 and 1986. (ECF No. 3, Complaint, at ¶¶ 22-23). Defendants argue that this claim is without merit because Plaintiff "has failed to establish any deprivation of a federal civil right in violation of Section 1983." (ECF No. 31, Defendants' Brief, at p. 17). This argument is based on Defendants' presumption that the Court would find in their favor on Plaintiff's excessive use of force claim, which presumption has been proved incorrect. As a result, the grounds upon which Defendants seek summary judgment on Plaintiff's conspiracy claim are no longer valid, and the claim will be allowed to proceed, accordingly.

An appropriate Order follows.

_____
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: June 19, 2018